**In re Anonymous No. 69 D.B. 85**

Disciplinary Board Docket no. 69 D.B. 85.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

PADOVA, *Member,* June 20, 1988—Pursuant to rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## HISTORY OF PROCEEDINGS

On August 20, 1985 the Supreme Court of Pennsylvania issued an order suspending respondent from the practice of law pursuant to rule 214(d), relating to attorneys convicted of crimes, and referred the matter to the disciplinary board for the institution of disciplinary proceedings. Respondent was suspended following his conviction of one count of conspiracy to commit mail fraud and interstate transportation in aid of racketeering, three counts of mail fraud, and five counts of interstate transportation in aid of racketeering.

Petitioner's petition for discipline was filed on February 17, 1987, following respondent's unsuccessful appeal of his conviction to the Third Circuit Court of Appeals, the denial of his petition for certiorari to the U.S. Supreme Court, and an order of the district court directing respondent to commence service of his prison sentence. In the petition for dis-

cipline, petitioner averred that the conviction of respondent evidenced the violation of the following disciplinary rules:

(a) D.R. 1-102(A)(3), dealing with illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

(c) D.R. 1-102(A)(5), dealing with conduct prejudicial to the administration of justice; and

(d) D.R. 1-102(A)(6), dealing with conduct that adversely reflects on a lawyer's fitness to practice law.

On February 18, 1987 the disciplinary board issued an order approving the appointment of [A], disciplinary counsel, and the Office of Disciplinary Counsel as counsel to prosecute the disciplinary proceedings.

The matter was referred to Hearing Committee [    ] on March 19, 1987. A hearing was scheduled for June 25, 1987 but was rescheduled to take place on August 25, 1987. On August 3, 1987, however, respondent executed a resignation affidavit pursuant to rule 215, Pa.R.D.E. That resignation statement was rejected by the Supreme Court for failure to comply with the provision of rule 215(a)(3), Pa.R.D.E., requiring the acknowledgment of the truth of the material facts alleged in the complaint.

On October 6, 1987 the matter was reassigned to Hearing Committee [    ] because Hearing Committee [    ] was disqualified from hearing the matter after learning that respondent intended to consent to disbarment. A hearing was scheduled for October 22, 1987.

Prior to the scheduled hearing date, petitioner and respondent agreed to a stipulation of facts to be admitted into evidence before the hearing commit-

tee in lieu of other testimony or documentary evidence. Respondent decided to waive the hearing before the hearing committee making a hearing unnecessary. The parties then executed a waiver of hearing and stipulation on submission of evidence whereby the stipulation of facts and the attached documents were to constitute the entirety of the evidence to be considered by the hearing committee and were to be admitted without reservation by mailing the documents to the hearing committee. The documents were delivered to Hearing Committee [        ] and no hearing was held.

Both parties submitted briefs to the hearing committee. Petitioner presented arguments and authority supporting the disbarment of respondent. Respondent argued that it would be premature for the hearing committee to proceed in light of the fact that a petition for writ of habeas corpus, filed on behalf of respondent in the U.S. District Court, was pending at that time.

The report of Hearing Committee [        ] was filed on February 18, 1988. The hearing committee concluded that the petition for writ of habeas corpus did not affect the finality of the conviction of respondent and the matter was ripe for consideration by the hearing committee. The hearing committee went on to find that four of the disciplinary rules were violated as alleged in the petition for discipline. The recommendation of the hearing committee was that respondent be disbarred from the practice of law.

Neither party filed exceptions to the hearing committee report. The matter was adjudicated at the May 16, 1988 meeting of the disciplinary board.

## FINDINGS OF FACT

Paragraphs 1 through 15 are the facts as stipulated by the parties. Paragraphs 16 and 17 are findings

made by the hearing committee that have been adopted by the disciplinary board.

(1) Respondent was born in 1937, was admitted to practice law in the Commonwealth of Pennsylvania in 1964, and, before his suspension, his law office was located at [                    ]. Respondent is subject to the disciplinary jurisdiction of the Supreme Court of Pennsylvania and its disciplinary board.

(2) On October 22, 1984 a federal grand jury in the [        ] District of Pennsylvania returned its indictment of respondent and others which was filed to Criminal no. [        ] of the U.S. District Court for the [     ] District of Pennsylvania. The indictment, in its 16 counts, charged respondent with violations of the federal criminal laws of conspiracy to commit mail fraud and to commit racketeering in violation of Title 18 U.S.C. §371, of mail fraud in violation of Title 18 U.S.C. §1341, and of interstate transportation in aid of racketeering in violation of Title 18 U.S.C. §1952(a)(3).

(3) On November 9, 1984, respondent entered a plea of not guilty to the indictment of October 22, 1984.

(4) Prior to the trial of the charges in the indictment of October 22, 1984 before a jury, respondent, through his counsel, approached the U.S. Attorney and offered to present testimony against persons, indicted and then-unindicted, involved in the transactions which were the factual basis of his indictment. Respondent requested that the United States grant him immunity from prosecution in exchange for his cooperation and truthful testimony. U.S. Attorney [B], who was directing the government's case, indicated that cooperation by [respondent] was important and desirable but that respondent would be required to plead guilty to one of the

counts in the indictment of October 22, 1984. Respondent rejected the offer.

(5) The charges against respondent were tried to a jury during the time period from March 26, 1985 to June 24, 1985. During the trial of charges lodged against him, respondent took the stand in his own defense and, under oath, knowingly gave perjured testimony with regard to material facts and issues involved in his trial. The false trial testimony of respondent was in conflict with representations made to [B] of the U.S. Attorney's office prior to his trial.

(6) On June 24, 1985 the jury which had heard the case returned its verdict, finding respondent guilty of the charges contained in counts 1, 2, 3, 7, 9, 12, 13, 14, and 15 and not guilty of the remainder of the counts of the indictment of October 22, 1984.

(7) On July 23, 1985, Honorable [C], Senior District Judge, sentenced respondent to a total of 12 consecutive years of imprisonment and a total fine of $63,000. The single section 371 conspiracy conviction (count 1) accounted for five years and a $10,000 fine; the three section 1341 mail fraud convictions (counts 2, 3, 7) accounted for seven additional consecutive years of imprisonment and $3,000 in fines; and the five racketeering travel convictions (counts 9, 12, 13, 14, 15) added four additional five-year terms and one additional two-year term concurrent with other imprisonment terms and $50,000 in fines. ·

(8) On July 24, 1985, Senior U.S. District Judge [C] ordered respondent's suspension from practice before the U.S. District Court, [   ] District of Pennsylvania and referred the matter to the disciplinary board of the Supreme Court of Pennsylvania for action. On August 1, 1985, then Chief Disciplinary Counsel [D] informed the Supreme Court of Pennsylvania, via its prothonotary, [E], of the conviction

of respondent. By its order of August 20, 1985, filed to no. 502 Disciplinary Docket no. 2, the Supreme Court of Pennsylvania ordered the immediate suspension of respondent.

(9) Respondent thereafter timely appealed his conviction to the U.S. Court of Appeals for the Third Circuit, which upheld his conviction on April 28, 1986; respondent then filed a petition for certiorari with the U.S. Supreme Court. On January 12, 1987 the U.S. Supreme Court denied respondent's petition for certiorari. All appeals of the conviction of respondent are now concluded and his conviction is now final. On March 2, 1987, respondent began serving the sentence at the [  ] Federal Prison Camp.

(10) After his conviction and in late 1985, respondent became aware that the U.S. Attorney was seriously considering prosecution of his wife for her alleged participation in the [F] contract conspiracy. Respondent then offered to give truthful testimony against others involved in the [F] matter if the government would refrain from prosecuting his wife and would join in [respondent's] motion to reduce his sentence to that served by [G], the initiator and "mastermind" of the [F] conspiracy. [G] had pleaded guilty of one count of the indictment and had been a government witness in the prosecution of respondent. The government accepted the offer. There has been no indictment or prosecution of respondent's wife.

(11) On December 3, 4 and 5, 1986, respondent gave testimony, under oath, as a prosecution witness in the federal criminal trial of [H] and [I], both of whom were found guilty. In his testimony during the [H-I] trial respondent acknowledged that he had given perjured testimony in his own trial and stated that his testimony in the second trial was that same

truthful testimony he would have given had the government granted him immunity prior to his own trial. Within hours of leaving the stand in the [H-I] trial, [respondent] suffered a massive and near-fatal rupture of a major artery.

(12) On February 17, 1987, a petition for discipline styled *Office of Disciplinary Counsel, Petitioner v. [     ], Respondent* was docketed with the disciplinary board of the Supreme Court of Pennsylvania. On February 25, 1987, respondent voluntarily appeared at the [     ] office of the Office of Disciplinary Counsel and accepted personal service of the petition for discipline against him which was endorsed with a notice to plead within 20 days. Respondent has filed no answer to the petition for discipline.

(13) On February 17, 1987, respondent filed a motion, pursuant to rule 35, F.R.C.P., seeking reduction of the 12-year prison sentence imposed upon him. The motion was argued before Honorable [C] on March 6, 1987. U.S. Attorney [B] appeared at the March 6, 1987 hearing and pursuant to the government's earlier agreement, supported respondent's efforts to reduce sentence. By opinion and order dated March 19, 1987, Judge [C] denied respondent's motion for reduction of sentence. On April 6, 1987, respondent's appeal of Judge [C's] adverse determination of his sentence reduction motion was docketed in the U. S. Court of Appeals for the Third Circuit as *United States of America v. [Respondent]*, no. [    ]. There has been no decision by the Third Circuit as of this date.

(14) On August 27, 1987, Honorable [C], in response to respondent's filing of a resignation affidavit, ordered that [respondent] be disbarred from the bar of the U.S. District Court for the [   ] District of Pennsylvania.

(15) On September 2, 1987, respondent filed a rule 2255 motion in the U.S. District Court seeking to overturn his conviction. That motion is in the briefing and argument preparation process before Honorable [C].

(16) Facts to be considered in mitigation of any discipline of respondent are that he cooperated with the government's prosecution after his own conviction, he has suffered heavy penalties in fines and imprisonment, has experienced severe health problems apparently directly related to the stress of giving his testimony against others, and is a family man who provides a substantial portion of support of three children.

(17) Facts to be considered in aggravation of this matter are that respondent, privileged by birth, education and possession of a position of public trust in which he possessed considerable political influence, betrayed that public trust, did so for the purposes of self-enrichment, and used his legal expertise to conceal and to advance the illegal activities in which he and others were engaged; and conspired corruptly to influence lawyer officials of the commonwealth government in the performance of their duties.

The parties also stipulated to the admissibility of copies of 10 documents relating to the conviction of respondent. These documents are:

(1) A certified copy of the October 22, 1984 indictment against respondent filed to Criminal no. [ ] in the U.S. District Court for the [ ] District of Pennsylvania.

(2) A one-page plea of not guilty of respondent dated November 9, 1984.

(3) Jury verdicts in *United States v. [Respondent]* dated variously on June 20, 21 and 24, 1985 and relating to each of the 16 counts of the indictment of respondent.

(4) A three-page certified judgment and probation/commitment order dated July 23, 1985 in *United States v. [Respondent]*.

(5) The 25-page certified transcript of sentencing proceedings in *United States v. [Respondent]* before Honorable [C] on July 23, 1985.

(6) Certified order no. 2 of July 24, 1985 of Honorable [C], U.S. District Judge in *United States v. [Respondent]*, suspending respondent.

(7) Certified order and opinion of Honorable [C] in *United States v. [Respondent]*, both dated October 17, 1985, denying [respondent's] motions for judgment of acquittal and for a new trial.

(8) Certified judgment of April 28, 1986 of the U.S. Court of Appeals for the Third Circuit affirming the July 23, 1985 judgment and commitment order of Judge [C] in *United States v. [Respondent]* and the related 24-page opinion of the Third Circuit.

(9) Docket entries indicating U.S. Supreme Court denial of certiorari, January 12, 1987 in *United States v. [Respondent]* and order of January 21, 1987.

(10) Order and opinion of Honorable [C] dated March 19, 1987, in *United States v. [Respondent]* regarding his denial of the rule 35 motion.

## DISCUSSION

The inital issue to be considered is whether this matter is ripe for disciplinary proceedings at this time in light of respondent's pending petition for a writ of habeas corpus in federal court. Rule 214(f), Pa.R.D.E. provides that upon the receipt of a certificate of conviction of an attorney the court shall refer the matter to the board for the institution of a formal proceeding before a hearing committee. The only exception to this provision is that there is to be no hearing "until *all appeals* from the conviction are

concluded." Rule 214(f), Pa.R.D.E. (emphasis supplied)

The hearing committee concluded that the "possibility of post-conviction relief through applications for writs of habeas corpus or motions for new trial does not affect the finality of a conviction and, therefore, pursuant to rule 214(f), Pa.R.D.E. the convictions of respondent are final and this matter is ripe. . . ." The board concurs in this conclusion. The direct appeals from respondent's conviction were exhausted when the U. S. Supreme Court denied respondent's petition for certiorari on January 12, 1987. Therefore, when the matter was referred to the hearing committee all *appeals* from the conviction were concluded as required by rule 214.

Disciplinary counsel provided legal authority from Maryland in support of the assertion that respondent's conviction is final and this matter is ripe for disciplinary proceedings at this time. In *Maryland State Bar Association Inc. v. Kerr,* 272 Md. 687, 326 A.2d 180 (1974), a federally convicted attorney excepted to a state court recommendation of disbarment, alleging that the judgment of conviction was not final because there was pending at that time an appeal from the federal district court's denial of her 28 U.S.C. §2255 motion. The Maryland court rejected the contention of the attorney stating that a pending section 2255 proceeding does not destroy the finality of a criminal conviction because the section 2255 proceeding is a civil proceeding collateral to and not part of the original criminal case. The Maryland court went on to cite federal authority in support of this proposition. Therefore, in the matter at hand the section 2255 motion of respondent should not affect the finality of his conviction. This matter was properly before the hearing committee and is now properly before the board for adjudication and recommendation.

The remaining issue to be considered is the extent of discipline to be imposed upon respondent. The hearing committee concluded that respondent violated the four disciplinary rules, as alleged in the petition for discipline, and recommended that respondent be disbarred because of his conduct.

Based on respondent's conviction of the conspiracy, mail fraud, and interstate transportation in aid of racketeering convictions, and the underlying facts and circumstances, it is apparent that respondent has violated D.R. 1-102(A)(3), (4), (5) and (6). Certainly respondent's participation in the scheme to bribe public officials so as to implement the overpriced FICA recovery system without competitive bidding and at the expense of unwitting taxpayers involved a crime of moral turpitude in violation of D.R. 1-102(A)(3). Respondent was convicted of a crime that by its definition entails fraud so that respondent has violated D.R. 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The conviction of respondent of conspiracy to corruptly influence public officials, some of whom were attorneys, by bribery constitutes conduct prejudicial to the administration of justice, in violation of D.R. 1-102(A)(5). Furthermore, the conviction of respondent in and of itself indicates that he engaged in conduct that adversely reflects on his fitness to practice law in violation of D.R. 1-102(A)(6).

In addition to being convicted of the aforementioned crimes, respondent also gave false testimony during his own trial. Even though he was not charged with and convicted of committing perjury, respondent admitted under oath during the [H-I] trial that he had given perjured testimony in his own trial. This fact was reiterated in the stipulation of facts entered into between petitioner and respondent. As a result of respondent's offer of per-

jured testimony, it is evident that he violated D.R. 1-102(A)(5) by engaging in conduct that was prejudicial to the administration of justice. Respondent has admitted that he offered perjured testimony and, by its very nature, perjury is detrimental to the administration of justice because the truth upon which the verdict turns is concealed.

The crimes of which respondent was convicted and the disciplinary rules that he violated clearly indicate the seriousness of this matter and the need for strict discipline. As petitioner argued in the brief to the hearing committee, the convictions and violations of the disciplinary rules, when viewed individually, would be sufficient to support disbarment as the discipline for each conviction and each rule violation. But the conviction of multiple charges and the violation of multiple rules, when viewed in the aggregate, present an even greater argument for disbarment.

Even assuming that respondent's conviction is not final there is evidence on the record, separate and apart from the conviction of respondent, to support a recommendation that respondent be disbarred. As indicated previously, respondent has admitted that he offered perjured testimony at his own trial. In paragraph nine of the stipulation of facts, respondent has stipulated that all appeals of his conviction are concluded and that his conviction is now final. Furthermore, the record indicates that respondent did participate in the conspiracy as alleged because of his testimony at later trials. The perjured testimony, the stipulation of finality, and the evidence of participation in the conspiracy, apart from the actual conviction of respondent, is sufficient to support the recommendation that respondent be disbarred from the practice of law.

## RECOMMENDATION

Based upon the foregoing discussion, the disciplinary board recommends that respondent be disbarred from the practice of law. The board recommends further that the court, pursuant to rule 208(g), Pa.R.D.E., direct respondent to pay the necessary expenses incurred in the investigation and prosecution of this proceeding.

Messrs. McGinley and Keller and Ms. Heh did not participate in the adjudication.

## ORDER

And now, September 1, 1988, upon consideration of the report and recommendations of the disciplinary board dated June 20, 1988, it is hereby ordered that [respondent] be and he is disbarred from the bar of this commonwealth, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.